# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **WILLIE J. ABNER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **CIVIL ACTION NO.:** |
| | ) **2:07-CV-1368-VEH** |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Willie J. Abner (hereinafter "Mr. Abner") brings this action pursuant to 42 U.S.C. §§ 261(I) and 223 of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), which denied his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Abner timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to § 205(g) of the Social Security Act. 42 U.S.C. § 405(g) (2000).[1]

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## **FACTUAL AND PROCEDURAL HISTORY**

Mr. Abner was a 48-year-old male at the time of his hearing before the administrative law judge ("ALJ"). (Tr. 370.) He has a high school education and one year of college education. (Tr. 372.) Mr. Abner served in the Army from 1973-1976 and received an honorable discharge. (Tr. 370-71.) His past relevant work experiences have been as an oven operator, press operator, and general laborer. (Tr. 101, 373-75, 399.) Mr. Abner claims he became disabled on January 1, 2002, due to gout, hypertension, diabetes, Paget's disease, and chronic hip, foot, and knee pain. (Tr. 24; Doc. 9 at 2.) However, he subsequently amended the onset date to his last day of full-time work on March 24, 2002. (Tr. 369.)

Mr. Abner filed his application for a period of disability, DIB, and SSI payments on March 25, 2002. (Tr. 24.) The claims were denied by the Commissioner on June 13, 2002. (Tr. 37.) Mr. Abner then filed a timely written request for a hearing on June 25, 2002. (Tr. 45.) The hearing was held on May 15, 2003. (Tr. 24, 367.) The ALJ concluded that Mr. Abner was not disabled and denied his application on January 28, 2005. (Tr. 34.)

Mr. Abner filed a timely request for a review of the hearing decision to the Appeals Council on February 21, 2005. (Tr. 20.) The review was denied by the Appeals Council on July 18, 2005. (Tr. 9.) The ALJ's decision thus became the

Commissioner's final decision on that date. *Id.*

Mr. Abner filed a Complaint on July 24, 2007, which asks this court to review the ALJ's decision. (Doc. 1.) Mr. Abner also filed a motion for in forma pauperis on July 24, 2007. (Doc. 2.) This court granted the request to proceed in forma pauperis on July 25, 2007. This court has carefully considered the record and affirms the decision of the ALJ.

## **STANDARD OF REVIEW**[2]

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. The court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable mind might accept as

---

[2] In general, the legal standards applies are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statues and regulations exist for DIB and SSI claims. Therefore, citations in this opinion shall be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

adequate to support a conclusion." *Richardson,* 402 U.S. at 401. Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth,* 703 F.2d at 1239. Moreover, the reviewing court may not reweigh the evidence or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990). While judicial review of the Commissioner's factual findings is limited to the substantial evidence standard, the court reviews the Commissioner's legal decisions *de novo* in evaluating claims. *See Passopulos v. Sullivan*, 976 F.2d 642, 645 (11th Cir. 1992); *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 27, 2008.

twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote*

*v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote,* 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Mr. Abner has not engaged in substantial gainful activity since the alleged onset of his disability on March 24, 2002.  (Tr. 25.)  She also found that Mr. Abner's gout, Paget's disease, and diabetes are considered "severe" based on the requirements in Regulations 20 C.F.R. § 404.1520(c) and § 416.920(c).  (Tr. 29.)  The ALJ then held that the medically determinable impairments, in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404 subpt. P, app. 1, of the Social Security Regulations.  *Id.*

The ALJ concluded that Mr. Abner's impairments prevent him from performing his past relevant work.  (Tr. 31, 33 ¶ 8.)  The ALJ then determined that Mr. Abner's residual functioning capacity allows him to perform work at the light exertional level.[4]  (Tr. 31, 34 ¶ 12.)  She established that Mr. Abner "retains the

---

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). A job could required "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." *Id.*

capacity to stand, walk, and/or sit, in any combination, for at least six hours each in an eight-hour workday with regular breaks [and] can lift and carry up to 20 pounds occasionally and ten pounds frequently." (Tr. 31, 33 ¶ 7.)  The light work is limited in that it should require no climbing of ladders, ropes, or scaffolds; no more than occasional balancing; no kneeling, crouching, or crawling; and no work at protected heights.  *Id.*  The ALJ decided any pain suffered would not exceed mild to moderate levels. (Tr. 31.)

Using the Medical-Vocational Guidelines would direct a decision of "not disabled" under Rules 202.21 and 202.14. (Tr. 32.) However, the guidelines are only a framework for the decision when Mr. Abner cannot perform all the exertional demands of work at the light level of exertion.  *Id.*  As such, the ALJ used a vocational expert to help determine whether or not there are a significant number of jobs that Mr. Abner can perform.  *Id.*

The vocational expert qualified Mr. Abner's past work experiences as semi-skilled to unskilled and required medium to heavy exertional demands. (Tr. 31.) The expert determined that Mr. Abner has no transferable skills.  *Id.*  In response to a hypothetical question posed after the hearing, the vocational expert indicated that Mr. Abner, given his age, education, work experience, residual functional capacity, and inability to transfer skills, could be employed in the  protective and security service

workforce or in benchwork jobs such as sorters, assemblers, inspectors, and cashiers. (Tr. 32). The vocational expert further estimated more than 950,000 of these jobs existed nationally and more than 29,500 existed in Alabama. (*Id.*) Based on this testimony from the vocational expert, the ALJ determined that a significant number of jobs existed in the national economy that Mr. Abner could perform. (Tr. 32-33, 34 ¶ 13.)

The vocational expert also noted that if, as alleged, Mr. Abner were unable to sustain a full workday or work week because of pain or if he required four hours of pain management daily, he would be unable the perform the jobs cited or any other jobs existing in significant numbers. (Tr. 32.) The ALJ, however, found Mr. Abner's allegations of pain to be inconsistent with the medical evidence and not credible. *Id.*

The ALJ concluded that Mr. Abner was not under a disability at any time through the date of the ALJ's decision and therefore was not eligible for DIB under §§ 216(i) and 223(d) of the Social Security Act. (Tr. 33, 34.) Further, relating to his application for SSI, Mr. Abner similarly was found not disabled under §§ 1602 and 1614(a)(3)(A) of the Social Security Act. (*Id.*)

## ANALYSIS

A court can reverse a finding of the Secretary if it is not supported by substantial evidence. 24 U.S.C. § 405(g). "This does not relieve the court of its

responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5] Mr. Abner asserts that "the findings of the Commissioner are not based upon substantial evidence and that improper legal standards were applied." (Doc. 1 at 2; *see also* Doc. 9 at 4.) In its review, this court finds that the ALJ's decision was supported by substantial evidence and that the ALJ applied the correct legal standard.

## I.     THE ALJ PROPERLY APPLIED THE PAIN STANDARD.

Mr. Abner asserts that the ALJ failed "to properly consider plaintiff's claim under the Eleventh Circuit pain standard." (Doc. 9 at 9.) In determining whether to credit a claimant's subjective testimony of pain or other symptoms, the pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Foote*, 67 F.3d at 1560. A claimant's statements about pain or other symptoms do not alone establish disability.

---

[5]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Instead, medical signs and laboratory findings must depict medical impairments that could reasonably be expected to produce the alleged symptoms. *See id.; see also Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citing *Landry*, 782 F.2d at 1551). When an impairment that could reasonably be expected to produce the symptom(s) alleged has been shown, the intensity and persistence of the symptom(s), such as pain, will be evaluated based on all the evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ specifically weighed Mr. Abner's subjective complaints in determining his residual functioning capacity. As discussed above, the ALJ properly found that Mr. Abner suffers from an underlying medical condition, satisfying the first prong of the pain standard. (Tr. 30.) However, the ALJ then determined that Mr. Abner could not meet the second prong of this standard. *Id.* More specifically, despite evidence of underlying medical conditions that could produce some degree of pain, the ALJ concluded that Mr. Abner's subjective complaints of pain were not supported by objective medical evidence and were in conflict with statements recorded in the medical evidence. (Tr. 32.) Additionally and as demonstrated below, the ALJ specifically rejected Mr. Abner's pain allegations.

A credibility finding is within the "province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). However, if the ALJ discredits a claimant's

subjective allegations of pain, she must "articulate explicit and adequate reasons" for her judgment. *Foote*, 67 F.3d at 1561-62. For example, the absence of complaints of pain to doctors can contradict an allegation that one continuously met the pain standard. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1)-(3). The ALJ need not cite to particular phrases or formulations, but her credibility determination cannot be so broad as to prevent subsequent examination. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court reviews the ALJ's credibility determination to decide whether, as a whole, it is supported by substantial evidence from the record. *See id.* "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote,* 67 F.3d at 1562 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

Here, the ALJ held that Mr. Abner's testimony about his inability to work due to pain was not credible. The ALJ gave three reasons for discrediting Mr. Abner. First, although Mr. Abner described pain in his left hip and back on a May 14, 2003 doctor's visit, Mr. Abner rated his pain as "0" and reported that he seldom had pain and that, when he did, it was relieved through medicine. (Tr. 32.) Although in November of 2000, Mr. Abner described his pain as a severity of 10 on a 1-10 scale, this was before medication and treatment and one and a half years before Mr. Abner's last period of full time work. (Tr. 164.) Similarly, the description of his pain as a "10"

on January 2002 was 3 months before Mr. Abner's full time work ended. (Tr. 144.)

Relatedly, after complaints of knee pain in March of 2002, an examination found no inflammation or effusion in either knee, and both knees retained their full range of motion. (Tr. 27.) His foot pain was diagnosed as simply a mild sprain and foot bruise in March of 2002. *Id.* Later, Mr. Abner rated his pain as "0" in March 2004. (Tr. 30.) As the ALJ noted, the medical evidence reveals that Mr. Abner's overall pain scores remained low on numerous occasions. (Tr. 284, 285, 289, 293, 301, 337, 357.)

Second, Mr. Abner's condition of Paget's disease has been "virtually asymptomatic since treatment" which began prior to Mr. Abner's alleged onset date. *Id.* More particularly, as the ALJ explained:

> [Mr. Abner's] complaints of severe left hip pain in late 2001 and early 2002 are credible given the subsequent diagnosis with Paget's disease. However, he saw significant improvement with treatment and was able to return to work by mid-February 2002. Mr. Abner's medical records reflect few complaints of even minimal hip pain since that time, and his current physicians consider this condition to be asymptomatic, requiring no treatment.

(Tr. 30.)

Mr. Abner relies upon treating physician Dr. Moore's form stating that Mr. Abner would suffer from permanent or long-term incapacity. (Doc. 9 at 7.) However, in this same form, Dr. Moore states that Mr. Abner would be able to work a "sit down

job" and is "otherwise [] in excellent health."  (Tr. 174, 175.)

Third, Mr. Abner's testimony regarding the frequency and severity of episodes of gout in his hips, knees, feet, and other joints are not supported by the evidence.  *Id.* In fact, there is "no evidence to support [Mr. Abner's] allegation that he experiences two gout episodes per week." (Tr. 30.)  For example, in October 2002, the ALJ noted that he rated his pain as only "2" and denied any joint swelling since he was hospitalized for diabetes in June 2002.  (*Id.*)  The ALJ further pointed out that while Mr. Abner was advised to return for arthrocentesis if he experienced an acute gout attack so that a definitive diagnosis could be made, he failed to return during a subsequent flare-up.  (*Id.*)  The ALJ also observed that Mr. Abner's symptoms have always been resolved before visiting the rheumatology clinic.  (*Id.*)  Finally, the ALJ explained that, although Mr. Abner complained of gout in March 2004, he exhibited no signs of the problem during physical examination.  (*Id.*)

Therefore, the ALJ evaluated Mr. Abner's testimony, medical impairments, and medical records in determining Mr. Abner's credibility regarding his pain.  As the ALJ articulated explicit and adequate reasons for her judgment regarding Mr. Abner's ability to work despite his subjective complaints of pain, the ALJ was reasonable to conclude Mr. Abner was not disabled under the pain standard.

### II.   THE ALJ'S ASSESSMENT OF MR. ABNER'S CONDITIONS UNRELATED TO PAIN WAS ALSO PROPER.

The ALJ further stated that "the evidence also fails to support the claimant's allegations of significant limitations associated with his diabetes." (Tr. 31.) In drawing this conclusion, the ALJ properly relied upon Mr. Abner's physicians' characterization of his diabetes as controlled and Mr. Abner's report during a follow-up visit that he was doing well and desired to get off insulin if possible. (*Id.*)

Similarly, regarding Mr. Abner's hypertension, although on February 5, 2002, treating physician Dr. Huddle described it as "out of control," he attributed this poor condition to Mr. Abner's failure to take his blood pressure medications as prescribed. (Tr. 172.) As the ALJ explained, Mr. Abner's hypertension "was responding well to treatment and [was] characterized as controlled until March 2004, when the claimant was found to have proteinuria." (Tr. 29).

The ALJ then noted that Mr. Abner was being treated for this complication of having excess protein in the urine with an additional medication and that the record showed "no evidence of any permanent end organ involvement." (*Id.*). Finally, the ALJ determined that "no persuasive evidence [existed] indicating that Mr. Abner's hypertension results in more than minimal, if any, vocationally relevant limitations." (*Id.*).

Therefore, the ALJ's assessment of the record properly reflects the lack of any clinical and laboratory findings in Mr. Abner's treating records supporting a disabled status, *see Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985), based upon diabetes and/or hypertension. Accordingly, substantial evidence supports the ALJ's decision rejecting Mr. Abner's subjective complaints of other disabling symptoms unrelated to pain that would prevent him from being able to perform within the range of light work with limitations.

### III. THE ALJ APPLIED THE CORRECT LEGAL STANDARD AS SET FORTH IN 20 C.F.R. § 404.1520(a)(4).

Mr. Abner also claims that the ALJ decision applied "improper legal standards." (Doc. 1 at 2.) The proper legal standard for determining whether a claimant is disabled is set forth above in this opinion. (*See* Statutory and Regulatory Framework, *supra* at 4-6.)

The ALJ applied the proper legal standard in concluding that Mr. Abner is not disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(a)(4). First, the ALJ found that Mr. Abner had not engaged in substantial gainful activity since the alleged onset date of his disability. (Tr. 25.) Second, the ALJ found that Mr. Abner's impairments of gout, Paget's disease, and diabetes were considered "severe" based on the requirements of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr.

29.) Third, the ALJ determined that Mr. Abner's impairments do not meet or medically equal any of the listed impairments in 20 C.F.R. § 404, subpt. P, app. 1. (Tr. 29.)

Fourth, the ALJ found that Mr. Abner is not capable of performing any of his past relevant work. (Tr. 31.) Fifth and finally, the ALJ concluded that Mr. Abner is capable of performing work, with limitations, at the light exertional level. (Tr. 31.) Based upon the vocational expert's testimony, jobs available to Mr. Abner include occupations in the protective and security service and benchwork jobs such as sorters, assemblers, inspectors, and cashiers. (Tr. 32.) Reliance upon testimony from the vocational expert is appropriate as "[i]n this Circuit, the preferred method of demonstrating job availability where a plaintiff is unable to perform a full range of work at a given functional level or when a claimant has both exertional and nonexertional limitations is through the testimony of a vocational expert." *Byrd v. Apfel*, No. Civ. A. 95-0218-RV-S, 2000 WL 726212, at *7 (S.D. Ala. Apr. 28, 2000) (citing *Welch v. Bowen,* 854 F.2d 436, 439-440 (11th Cir. 1986)).

Therefore, the ALJ determined that Mr. Abner cannot be considered disabled under the definition of disability provided in the Social Security Act because he failed the five-point test under sections (3) and (5). Accordingly, the ALJ applied the proper legal standard in concluding that Mr. Abner was not disabled, and the decision

of the Commissioner is due to be affirmed.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 11th day of April, 2008.

*/s/ VEHopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge